**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | |
|---|---|
| **REGGIE RICE,** | ) |
| | ) |
|     **Petitioner,** | ) |
| | ) |
| **v.** | )    **CIVIL ACTION NO. 1:12-0406** |
| | ) |
| **KAREN HOGSTEN, Warden,** | ) |
| | ) |
|     **Respondent.** | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

On February 15, 2012, Petitioner, then incarcerated at FCI McDowell,[1] located in Welch, West Virginia, filed his Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in State or Federal Custody.[2] (Document No. 1.). In his Petition, Petitioner complains that the BOP

---

[1] A Section 2241 petition for *habeas corpus* must be filed "in the district in which the prisoner is confined." *In re Jones*, 226 F.3d 328, 332 (4th Cir. 2000). In the instant case, Petitioner filed his Section 2241 Petition while incarcerated at FCI McDowell, located in Welch, West Virginia. FCI McDowell lies within the Southern District of West Virginia. While Petitioner's Petition was pending before this Court, he was transferred by the BOP to FCI Victorville, which is located in the Central District of California. The Fourth Circuit has stated that "[j]urisdiction is determined at the time an action is filed; subsequent transfers of prisoners outside the jurisdiction in which they filed actions does not defeat personal jurisdiction." *United States v. Edwards*, 27 F.3d 564 (4th Cir. 1994)(*citing Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990)); *also see Chaney v. O'Brien*, 2007 WL 1189641 at * 1 (W.D.Va. 2007)(finding that jurisdiction over petitioner was determined at the time the action was filed, not based on petitioner's subsequent transfer to Illinois during pendency of his Section 2241 Petition); *Martin v. United States*, 2006 WL 231485 (N.D.W.Va. Jan. 31, 2006)(stating that "once properly filed . . . a prisoner's subsequent transfer does not necessarily destroy jurisdiction in the district where the prisoner was incarcerated at the time the habeas petition was filed"). The undersigned therefore finds that since Petitioner's Petition was properly filed in the Southern District of West Virginia, this Court has authority to consider Petitioner's Petition based on the merits notwithstanding his transfer to a prison outside this District.

[2] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

incorrectly found him guilty of Possession of a Cell Phone. (Id.) Petitioner claims that while he was incarcerated at FCI Fort Dix, "[h]e received an incident report that erroneously charged him with 108/conduct that disrupts, most like possession of a hazardous tool (cell phone), for possession of a cellular phone." (Id., p. 1.) Petitioner states that he was subsequently found guilty. (Id.) Petitioner complains that he received the following sanctions: disciplinary segregation, disallowance of 40 days good conduct time, forfeited 220 days of non-vested good conduct time, and loss of privileges. (Id., pp. 2 and 4.) First, Petitioner alleges that his due process rights were violated because the BOP failed "to provide Petitioner notice that the punishment for the charged misconduct had been increased from a moderate level violation to a greater severity level violation." (Id., pp. 4 - 8.) Petitioner explains that at the time of the act, possession of a cell phone was a violation of Code 305. (Id., p. 4.) Petitioner states that he was "charged incorrectly in the greatest severity category rather than a moderate severity." (Id.) Petitioner states that he "received no notice that the charged act had elevated from a PAC 305 to a PAC 108; PAC 108, at the time of the instant conduct, July 30, 2011, did not contemplate or encompass the charge for possession of a cellular phone." (Id., pp. 4 - 5.) Petitioner contends that "[t]o comport with due process, prison officials are required to prove fair notice of any rule changes even if an alleged memorandum exists, this does not satisfy due process or the requirements because it was not posted where Petitioner was able to see it while he was in the Fort Dix prison." (Id., p. 6.)

Second, Petitioner argues that "[r]ule changes must be made via Administrative Procedures Act and the failure to do so in this case precludes the FBOP from enforcing the proposed rule as if it had been implemented." (Id., pp. 9 - 10.) Petitioner explains that "[t]he list of prohibited offenses in the FBOP are promulgated by the Attorney General of the United States and are set forth in the

Code of Federal Regulations." (Id., p. 9.) Petitioner argues that changes to the Code of Regulations can only be made through provisions of the APA." (Id.) Petitioner claims that PAC 108 was not amended pursuant to APA, but the BOP "charged the Petitioner in the instant case as if the amendment for PAC 108 had been implemented." (Id.)  Petitioner argues that "the failure to change the rule through the APA renders them invalid." (Id., p. 10.)

Third, Petitioner claims PAC 108 was "void for vagueness." (Id., p. 11.) Petitioner states that the "vagueness standard clearly applies and the FBOP has clearly violated their agency obligation by not changing the rule as required by the APA and providing adequate notice of the change to inmate and staff." (Id.)

Finally, Petitioner contends that he "has been treated differently from other similarly situated inmates within the FBOP, [which] amounts to an Equal Protection violation." (Id., pp. 12 - 14.) Petitioner states that the BOP "chose between various random inmates to charge them with 305 and 108 code infractions all different severity levels of infractions." (Id., p. 12.) Petitioner alleges that "they were not done with the discretion of the agency, but they arbitrarily chose different inmates to place the 108 incident report and label a cell phone a 'hazardous tool.'" (Id., pp. 13.) Petitioner asserts that the BOP "created purposeful discrimination based on their like or dislike of a the particular inmate charged - - creating a non-legitimate rationale to penological interest."

In support of his Petition, Petitioner attaches the following Exhibits: (1) A copy of the Code Sections 108 and 305 (Id., pp. 18 - 19.); (2) A copy of the "Receipt - Administrative Remedy" from the Administrative Remedy Coordinator at the Northeast Regional Office dated September 15, 2011 (Id., p. 20.); and (3) A copy of the "Receipt - Administrative Remedy" from the Administrative Remedy Coordinator at the Central Office dated December 8, 2011 (Id., pp. 21 - 22.).

By Order entered on November 27, 2012, the Court ordered that Respondent file an Answer to the allegations contained in the Petitioner's Application and show cause, if any, why the Writ of *Habeas Corpus* sought by the Petitioner in this case should not be granted. (Document No. 8.) On January 2, 2013, Respondent filed his Response to the Order to Show Cause. (Document No. 11.) Respondent argues that Petitioner's Petition should be denied based on the following: (1) "Inmates at FCI Fort Dix were repeatedly informed that possession of a cell phone could constitute possession of a hazardous tool" (Id., pp. 6 - 10.); (2) "Code 108, even when applied to possession of a cell phone, has been consistently upheld as valid under a vagueness analysis" (Id., p. 10.); (3) "The notice and comment provisions of the APA do not apply to the BOP's internal agency guidelines" (Id., pp. 10 - 11.); (4) "Petitioner's non-specific allegations of equal protection violations are without support and should be dismissed" (Id., pp. 11 - 12.); and (5) "Petitioner received the rights afforded pursuant to Wolff" (Id., pp. 12 - 13.)

As Exhibits, Respondent attaches the following: (1) A copy of the "Declaration of Sarah Lilly" (Document No. 11-1, pp. 1 - 2.); (2) A copy of the "Incident Report" dated July 30, 2011 (Id., pp. 4 - 5.); (3) A copy of the "Notice of Discipline Hearing Before the DHO dated August 2, 2011" (Id., p. 7.); (4) A copy of the "Inmate Rights at Disciplinary Hearing Form" (Id., p. 9.) (5) A copy of the "DHO Report" (Id., pp. 11 - 13.); and (6) A copy of the Documentary Evidence (Id., pp. 15 - 17.)

On February 1, 2013, Petitioner filed his "Objections and Amendments." (Document No. 12.) First, Petitioner argues that "failure to update Inmate Handbooks for over nine years amounts to serious vagueness concerns from an enforcement perspective. Memorandums, if existed, were insufficient real notice." (Id., pp. 4 - 5.) Second, Petitioner contends that "Code 108 is

4

unconstitutionally vague because it allows BOP staff unbridled discretion." (Id., pp. 5 - 7.) Third, Respondent asserts that the "BOP's new rule was substantive towards the duration of Rice's sentence and the APA applies." (Id., pp. 7 - 9.)

Additionally, Petitioner amends his Petition to include the claim that his due process rights were violated during the disciplinary process. (Id., pp. 9 - 15.) First, Petitioner asserts that "no where in the body of the Incident Report, Investigation, or the referral by the UDC Office was there an allegation of an 'altered charger.'" (Id., pp. 12 - 13.) Second, Petitioner complains that the "Memorandum of A. Chrystian, Senior Officer was not observed by the investigating officer or the UDC officer." (Id., pp. 13 - 14.) Finally, Petitioner asserts that "in denying Rice's appeal, the Administrator used the wrong standard of review." (Id., pp. 14 - 15.)

As Exhibits, Petitioner attaches the following: (1) A copy of Code Section 108 (Id., p. 17.); (2) A copy of Program Statement 5270.09 (Id., pp. 18 - 19.); (3) A copy of Administrator Harrell Watts' Response to Petitioner's Administrative Remedy Appeal dated June 22, 2012 (Id., p. 20.); and (4) Petitioner's "Declaration in Support of Section 2241 and Amendment" (Document No. 12-1.).

## DISCUSSION

**1.  Vagueness:**

Petitioner argues that his due process rights were violated because the BOP failed "to provide Petitioner notice that the punishment for the charged misconduct had been increased from a moderate level violation to a greater severity level violation." (Id., pp. 4 - 8.) Petitioner explains that he "received no notice that the charged act had elevated from a PAC 305 to a PAC 108." (Id., pp. 4 - 5.) Petitioner further states that "PAC 108, at the time of the instant conduct, July 30, 2011, did

not contemplate or encompass the charge for possession of a cellular phone." (Id.) Respondent, however, contends that Petitioner's claim is without merit because "[i]nmates at FCI Fort Dix were repeatedly informed that possession of a cell phone could constitute possession of a hazardous tool." (Document No. 11, pp. 6 - 10.)

A criminal statute complies with due process if the statute "provide[s] adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal." United States v. Hsu, 364 F.3d 192, 196 (4th Cir. 2004). In the instant case, Petitioner does not dispute that he knew that possession of a cell phone was a disciplinary violation. (Document No. 1, p. 4.) Petitioner merely complains that he was not aware of the severity of the disciplinary violation. Unlike criminal statutes, no high degree of precision is required of disciplinary regulations, especially as to the sanction entailed. See Meyers v. Alldredge, 492 F.2d 296, 310 (3rd Cir. 1974.) Although "Petitioner has a due process right to notice as to general categories of the acts prohibited, he has no due process right to notice as to any specific administrative sanction he might face if his violation gets detected." United States v. Beason, 2011 WL 399896, * 8 (N.D.W.Va. Jan. 21, 2011). The Court further notes that Petitioner's reliance upon Neagle v. Grondolsky, 2010 WL 2546021 (D.N.J. June 18, 2010) and Hudson v. Zickefoose, 2010 WL 4746220 (D.N.J. Nov. 15, 2010), is misplaced. In Neagle, the District Court determined that petitioner's claim was moot because the Code 108 violation was expunged from Petitioner's record. Neagle, 2010 WL 2546021 at * 3. In Hudson, the District Court determined that even though petitioner's petition had been render moot based upon his re-sanctioning, Petitioner's claim was without merit "as to his assertion that he knew he was committing a disciplinary violation but – without knowing the particular sanction he would be facing if his infraction were detected." Hudson, 2010 WL 4746220 * 3.

Moreover, the undersigned finds that Petitioner had notice that possession of a cell phone was a prohibited act under Code 108. Petitioner was an inmate at FCI Fort Dix from February 2002 until September 2011. A review of case law reveals that on May 5, 2005, October 4, 2006, and on December 28, 2009, inmates at FCI Fort Dix were advised by memoranda that possession of a cell phone would be considered a violation of Code 108, possession of a hazardous tool. See Alamo v. Zickefoose, 2013 WL 1007676, * 15 (D.N.J. March 12, 2013)(finding that since as early as May 2005, inmates at FCI Fort Dix had ample notice through posted memoranda and town hall meetings that possessing a cell phone was a Code 108 offense); Myrieckes v. Caraway, 2012 WL 527585, * 2 (D.Md. Feb. 16, 2012)(finding the Warden of Fort Dix issued memoranda on October 4, 2006 and December 28, 2009, to the entire population stating that possession of a cell phone would be construed as a Code 108 violation); Bouchard v. Shartle, 2011 WL 2559530, * 6 (D.N.J June 27, 2011)(Warden of Fort Dix notified inmates on December 28, 2009, that possession of a cell phone could result in a 108 Code violation); Robinson v. Warden, 2007 WL 1140462, * 4 (D.N.J. April 16, 2007)("On May 5, 2005, a memorandum advised inmates at FCI Fort Dix that possession of a cell phone would be considered a violation of offense code 108, possession of a hazardous tool."). Accordingly, the undersigned finds that Petitioner's above claim is without merit.

Although Petitioner initially states that he does not dispute that possession of a cell phone is prohibited, he argues that Code 108 is unconstitutionally vague as to what constitutes a "hazardous tool." Specifically, Petitioner alleges that the BOP improperly considered a cell phone to be a "hazardous tool" under Code 108. Code 108 prohibited "[p]ossession, manufacture, or introduction of a hazardous tool ([t]ools most likely to be used in an escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security

7

or personal safety; e.g., hack-saw blade." The undersigned finds that Code 108 was not unconstitutionally vague. See Robinson v. Warden, 250 Fed. Appx. 462 (3rd Cir. 2007). It is well established that a person of ordinary intelligence would know that a cell phone would constitute a "hazardous tool." See United States v. Blake, 288 Fed.Appx. 791, 794 (3rd Cir. 2008)("the ordinary person would know that possessing a cell phone and a charger in prison 'threatens the order, discipline, or security' of that institution"); Myrieckes,, 2012 WL 527585 at * 2("it is clear that a person of ordinary intelligence would understand a cell phone could be used as a hazardous tool as defined by BOP regulations); Beason, 2011 WL 399896 at * 9 (finding that a cell phone constitutes a hazardous tool within the meaning of Code 108); Belt v. Drew, 2011 WL 6673294, * 3 (D.S.C. Sep. 20, 2011)("there is nothing unconstitutionally vague about including a cellular phone as a hazardous tool under [] code section [108]"). Furthermore, the BOP's interpretation of "hazardous tool" to include a cell phone is not plainly erroneous or inconsistent with BOP regulations. See Hicks v. Yost, 377 Fed.Appx. 223, 224-25 (3rd Cir. 2010)("the absence of the term 'cell phone' in the text of Code 108 did not prevent the BOP from interpreting that provision to include this item.") Based on the foregoing, the undersigned finds that Code 108 is not unconstitutionally vague.

**2.    Notice and Comment:**

Petitioner argues that "[r]ule changes must be made via Administrative Procedures Act and the failure to do so in this case precludes the FBOP from enforcing the proposed rule as if it had been implemented." (Document No. 1, pp. 9 - 10.) Thus, Petitioner claims that any change to Code 108 had to be made under the notice and comment provisions of APA. (Id.) Respondent argues that Petitioner claim is without merit because "the notice and comment provisions of the APA do not apply to the BOP's internal agency guidelines." (Document No. 11, pp. 10 - 11.)

When an agency promulgates substantive rules or regulations, the Administrative Procedure Act [APA], 5 U.S.C. § 553(b)-(d), requires the agency to publish in the Federal Register general notice of the proposed rule or regulation. 5 U.S.C. § 553(b). After notice is published, interested persons must be accorded a period of at least 30 days to comment on the proposed rule or regulation. 5 U.S.C. § 553(c). This notice and comment requirement, however, is inapplicable to "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). Interpretative rules "simply state what the administrative agency thinks the statute means, and only 'remind' affected parties of existing duties." Jerri's Ceramic Arts, Inc. v. Consumer Product Safety Commission, 874 F.2d 205, 207 (4th Cir; 1989). "In contrast, a substantive or legislative rule, pursuant to properly delegated authority, has the force of law, and creates new law or imposes new rights or duties." Id. The undersigned finds that BOP's disciplinary guidelines are internal agency guidelines, which are not subject to the rigors of APA. See Hall v. Zickefoose, 448 Fed.Appx. 184, 186 (3rd Cir. 2011)("The APA does not apply to PAC 108 because PAC 108 is an interpretive rule."); Alamo v. Zickefoose, 2013 WL 1007676 (D.N.J. March 12, 2013)("[T]he BOP's inclusion of cell phones and related components as hazardous tools under Code 108 is simply an expanding interpretation of what constitutes a hazardous tool so that the BOP can effectively address the evolving ways inmate conduct and the introduction of contraband can threaten institutional safety and security."); Walden v. Longley, 2012 WL 4971885 (W.D.Pa. Sep. 13, 2012)("[T]he inclusion of cell phones as 'hazardous tools' under Code 108 was an interpretative rule and not subject to the notice-and-comment requirement of the APA."); Ausberry v. Grondolsky, 2008 WL 4225174, * 4 (D.N.J. Sep. 2008)(BOP disciplinary guidelines are not subject to the notice and comment requirements of the APA because they are internal agency guidelines that are subject to

being altered at will). Accordingly, the undersigned finds that Code 108 was excluded from the notice and comment provisions of APA.

**3.     Due Process:**

Although the Fifth Amendment of the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law", the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for their period of incarceration. See U.S. Const. Amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Id. (emphasis added).

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." Id. at 343. Such interests, however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Consequently, in order to establish that a deprivation of his due process rights has occurred, Petitioner must identify a liberty interest which is protected by the Due Process Clause of the United States Constitution. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding that an inmate cannot be deprived of a protected liberty interest in good-time credits without procedural due process).

When a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected liberty interest in the inmate's release from confinement is implicated, and minimal procedural guarantees are recognized. Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). The Supreme Court stated what procedure is required at a minimum in Wolff, supra. An inmate subject to administrative disciplinary sanctions impacting the duration of his sentence is entitled (1) to receive advance notice of charges no less than 24 hours before the disciplinary hearing, (2) to present evidence and witnesses in his defense as long as it does not jeopardize institutional safety or correctional goals, and (3) to receive a written statement of the evidence relied upon and the reasons for the disciplinary action. Id., 418 U.S. at 563 - 569, 94 S.Ct. at 2978 - 2981. BOP regulations are clearly written in view of the constitutionally required minimum, but the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation when a protected liberty interest is evident as long as the constitutionally required minimum is met. See Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir 1996); Giovanni v. Lynn, 48 F.3d 908, 913 (5th Cir. 1995), cert. denied, 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995). The undersigned notes additionally that the Supreme Court has indicated that prison regulations are not designed to confer rights on or benefits to inmates. Rather, they are

11

primarily designed to guide correctional officials in the administration of prisons. Sandin v. Conner, 515 U.S. 472, 481- 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Having thoroughly examined the record in this case, the undersigned finds no indication of error of constitutional magnitude in the disciplinary proceedings. It is clearly evident that in charging and considering Petitioner's violation of Code 108, prison officials adequately adhered to the policies and procedures as prescribed in 28 C.F.R. § 541 and the Bureau of Prisons' Program Statement 5270.07. Petitioner received all documents pertinent to the charges against him, was advised of his rights, and had ample opportunity to present a defense to those charges. The undersigned notes that Petitioner received written notice of the charges on July 30, 2011,[3] and was provided a "Notice of Discipline Hearing Before the DHO" on August 2, 2011. (Document No. 11-1, pp. 4 - 7.) On the "Notice of Discipline Hearing Before the DHO," Petitioner indicated that he did not wish to have a staff representative or wish to call witnesses. (Id., p. 7.) The DHO hearing was held on August 4, 2011, and the DHO found that Petitioner violated Offense Code 108.[4] (Id. pp. 11 -

---

[3] The Incident Report dated July 30, 2011, described the incident as follows (Document No. 11-1, p. 4.):

> On the above date at approximately 5:10 a.m., during count, I observed the glow of a cell phone screen as inmate Rice #06702-052, placed the phone up to his ear while he was lying in his bunk as I was exiting room 347. I informed the 5702 officer and we both reentered room 347 and approached bunk 347-6U. Inmate Rice #06702-052 was still lying in his bunk and had the cell phone placed on his stomach. I confiscated the cell phone, escorted inmate Rice to the officer station and notified the operations lieutenant.

[4] In the "Specific Evidence Relied on to Support Findings," the DHO stated in pertinent part as follows: (Document No. 11-1, p. 12.):

> This decision is based on the evidence provided before me which is documented in the written report provided by the reporting employee. The employee documented,

13.) The DHO imposed the following sanctions: (1) 30 Days Disciplinary Segregation; (2) Disallowance of 40 days Good Conduct Time; (3) Forefeiture of 220 Days of Non Vested Good Conduct Time; (4) Loss of Commissary Privileges for 60 days; (5) Loss of "TRULINCS" Privileges for 18 months; (6) Loss of Phone Privileges for 18 months; and (7) Loss of Visitation Privileges for 60 days.[5] (Id., p. 12.) Petitioner received a copy of the DHO's Report on August 19, 2011. (Id., p.

"On the above date at approximately 5:10 a.m., during count, I observed the glow of a cell phone scree as inmate Rice #06702-052, placed the phone up to his ear while he was lying on his bunk as I was exiting room 347. I informed the 5702 officer and we both reentered room 347 and approached bunk 347-6U. Inmate Rice #06702-052 was still lying in his bunk and had the cell phone placed on his stomach. I confiscated the cell phone, escorted inmate Rice to the officer station and notified the Operations Lieutenant."

The DHO considered your statement at the hearing, specifically, "I was asleep and felt my bed shake and there was an officer on both sides. He said, I got it. I don't know if I was set up or whatever."

While you deny that the cell phone was yours, I find the staff member has no reason to falsify his account.

These statements along with the picture of the cell pone corroborate the incident report.

The violation of prohibited act Code 108, Possession of a Hazardous Tool, is supported in the incident report, specifically, "On the above date at approximately 5:10 a.m., during count, I observed the glow of a cell phone screen as inmate Rice #06702-052, placed the phone up to his ear while he was lying in his bunk as I was exiting room 347. I informed the 5702 officer and we both reentered room 347 and approached bunk 347-6U. Inmate Rice #06702-052 was still lying in his bunk and had the cell phone placed on his stomach."

Based on the greater weight of evidence provided before me, your actions were consistent with a violation of Code 108, Possession of a Hazardous Tool.

[5] The DHO stated the "Reason for Sanction or Action Taken" as follows (Document No. 11-1, pp. 13.):

The action on the part of any inmate to possess, manufacture, or introduce a

13

13.) Based on the foregoing, the undersigned finds no violation of Petitioner's due process rights.

Petitioner, however, contends that Respondent violated his due process rights because (1) "no where in the body of the Incident Report, Investigation, or Referral by the UDC Officer was there an allegation of an 'altered charger;'" (2) "The Memorandum of A. Chrystian, Senior Officer, was not observed by the investigating officer or the UDC officer;" and (3) "In denying Rice's appeal, the Administrator used the wrong standard of care." (Document No. 13, pp. 12 - 15.) First, the undersigned finds that it was unnecessary for the "Incident Report, Investigation, or Referral by the UDC Officer" to include an allegation of an "altered charger." Although the DHO Report indicates that the DHO considered documentary evidence that included a "black and white photo of the cell phone and altered charger," there is no indication that Petitioner was charged or punished for the possession of the "altered charger." Second, the undersigned finds that there is no requirement that the preparation of a memorandum by a senior officer, such as A. Chrystian, be observed by the investigating officer or the UDC officer. Finally, administrative officials did not

---

hazardous tool into any correctional institution threatens the safety and security, not only of the inmate involved, but that of the entire institution. In the recent past, inmates have used hazardous tools to affect escapes, and seriously injure other inmates and staff members. A cell phone falls under the classification of a hazardous tool, as it has been used to arrange rendezvous for escapes, and has been used to arrange contraband introductions, and further allows the inmate to make contact with individuals outside the institution, possibly for illicit or illegal activities, without the knowledge of staff. In accordance with the memorandum dated December 28, 2009, submitted by Donna Zickefoose, Warden, a cell phone is considered a threat to the security and orderly running of the institution, not only of the inmate involved, but that of the entire institution.

Disciplinary Segregation, Disallowance of Good Conduct Time, Forfeiture of Non Vested Good Conduct Time, loss of telephone, and TRULINCS, and visits, are meant to demonstrate the seriousness of the offense to you as well as everyone incarcerated at this facility.

violate due process by applying the incorrect "standard of care" in denying Petitioner's appeal. Inmates may file an appeal with the Regional Director within 20 days from the date he receives written notice of the DHO's decision. If the inmate is dissatisfied with the Regional Director's decision, the inmate may file an appeal with the Office of General Counsel. The undersigned notes that Petitioner took advantage of the appeal process, but the Regional Director and Office of General Counsel denied his appeals. The undersigned, however, finds that "appellate review is not an element of due process." Massey v. Ballard, 2009 WL 2916889 (S.D.W.Va. Sept. 8, 2009)(citing, Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983)); also see Moses v. Bledsoe, 2004 WL 3317657, at * 4 (N.D.W.Va. Sept. 28, 2004)(stating "there is no due process right to an appeal process"). Accordingly, the undersigned finds that administrative officials did not violate due process by denying Petitioner's appeal.

**4.      Equal Protection:**

Finally, Petitioner alleges that the BOP violated his right to Equal Protection by choosing "between various random inmates to charge them with 305 and 108 code infractions all different severity levels of infractions." (Document No. 1, p. 12.) Petitioner asserts that the BOP "created purposeful discrimination based on their like or dislike of a the particular inmate charged - - creating a non-legitimate rationale to penological interest." (Id., pp. 13.) The relevant equal protection cases provide a basic three-step analysis to determine whether an inmate's right to equal protection has been violated. First, the inmate must produce evidence to show that he was treated differently than other similarly situated inmates. See Durso v. Rowe, 579 F.2d 1365, 1371 (7th Cir. 1978). Second, the inmate must show that he was intentionally singled out for harsher treatment. See Brandon v. District of Columbia Bd. of Parole (I), 734 F.2d 56, 60 (D.C. Cir. 1984); Stringer v. Rowe, 616 F.2d

993, 998 (7th Cir. 1980). Third, if the inmate was purposefully singled out, the analysis can take one of two paths. The first path is taken if the inmate can show that the prison's motivation in effecting its differential treatment implicates a suspect classification or a fundamental right. If this is established, the Court must strictly scrutinize the prison's actions. See O'Bar v. Pinion, 953 F.2d 74, 81-82. The prison must show that the classification is narrowly tailored to a compelling governmental interest. Id. If the prison's reason for the differential treatment does not implicate a suspect class or a fundamental right, the analysis takes the second path. See Brandon (I), 734 F.2d at 60, Brandon v. District of Columbia Bd. of Parole (II), 823 F.2d 644, 650 (D.C. Cir. 1987). On this path, the differential treatment is subject only to rational basis review. See O'Bar, 953 F.2d at 81-82. A rational basis review requires that the government's decision to treat similarly situated individuals differently bear some rational relationship to a legitimate State purpose. See Id. at 81; Brandon (I), 734 F.2d at 60; Brandon (II), 823 F.2d at 650.

   The undersigned finds that Petitioner fails to allege how he was treated differently from a a similarly situated inmate. Petitioner's conclusory allegation that he is similarly situated to other inmates who received less severe sanctions is without merit. See Ryan v. Scism, 474 Fed.Appx. 49 (3rd Cir. 2012)(dismissing petitioner's equal protection claim where he alleged that inmates Hudson and Neagle received a lesser sanction for the same prohibited act, but "failed to offer evidence that Hudson and Neagle were similar situated to him.) Petitioner appears to contend that the BOP reduced sanctions for inmates in other cases, such as Neagle and Hudson, so they should do the same in his case. Petitioner, however, does not allege that the decision to impose a more severe sanction was based on any suspect classification. See Bouchard, 2011 WL 2559530 at * 7("The problem with Petitioner's equal protection claim is that, other than alleging that the BOP reduced the severity of

the disciplinary charge for cell phone possession in [Hudson and Neagle], he has alleged nothing to indicate that his disciplinary sanction was the result of purposeful discrimination."); Walden, 2012 WL 4971885 at * 8(although petitioner cited to cases where inmates received less severe punishment for the same violation committed by him, petitioner failed to put forth sufficient evidence that his disciplinary sanction was the result of purposeful discrimination). The undersigned, therefore, finds that Petitioner has failed to state a claim for denial of equal protection of the law.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Petitioner's Application under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody (Document Nos. 1 and 12.) and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Petitioner shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and counsel of record.

ENTER: September 19, 2013.

R. Clarke VanDervort
United States Magistrate Judge